UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MALAIKA COLEMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

GARRISON PROPERTY & CASUALTY INSURANCE CO. and UNITED SERVICES AUTOMOBILE ASSOCIATION,

Defendants.

Case No.1:19-CV-01745

The Honorable Virginia M. Kendall

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Plaintiff Malaika Coleman respectfully submits this Opposition to Defendants Garrison Property and Casualty Insurance Co. ("Garrison") and United Services Automobile Association's ("USAA") Motion to Dismiss Complaint (Dkt. No. 20).

**INTRODUCTION**

This is a putative class action alleging that USAA, through subsidiaries such as Garrison, systematically underpays its insureds on auto insurance claims by excluding sales tax and vehicle title transfer fees ("title fees") from the payments it makes when it declares a vehicle a total loss.[1] (Dkt. No. 1, Class Action Complaint ("Compl.") ¶¶ 1-5.) In its policies, including Plaintiff's policy, USAA promises to pay the "actual cash value" of the insured vehicle in the event of a total loss. (Compl. ¶¶ 4, 29-33, 37.) USAA defines "actual cash value" in its policies as "the

---

[1] Plaintiff has alleged that Garrison is merely an alter ego of USAA. (Compl. ¶¶ 12-25.) That is not at issue at this stage.

amount it would cost, at the time of loss, to buy a comparable vehicle." (*Id.* ¶¶ 4, 30.) In Illinois, the replacement cost of a vehicle necessarily includes sales tax and title fees. (*Id.* ¶¶ 5, 34-41.) As discussed below, courts recognize that the promise to pay "actual cash value" includes a promise to pay mandatory replacement taxes and fees. By failing to pay Plaintiff the cost of sales tax and title fees, Defendants failed to pay Plaintiff "the amount it would cost, at the time of loss, to buy a comparable vehicle" and thus failed to pay the "actual cash value" of her insured vehicle. Defendants thus breached the express terms of their policy contract with Plaintiff. (*Id.* ¶¶ 62-82.)

To escape liability, Defendants argue that they did not violate ILL. ADMIN. CODE tit. 50 § 919.80(c)(3)(A)(i), which provides minimum requirements relating to an automobile insurer's payment of sales tax and title fees. The argument is unavailing because Plaintiff's claim is not based on a violation of Section 919.80(c)(3)(A)(i). Plaintiff's claim is based on Defendants' breach of their promise to pay the "amount it would cost, at the time of loss, to buy a comparable vehicle." Section 919.80(c)(3)(A)(i) has no bearing on Plaintiff's claim.

Moreover, Plaintiff's claim is entirely consistent with Section 919.80(c)(3)(A)(i). Although Defendants suggest that Section 919.80(c)(3)(A)(i) sets forth a single process through which an insured can recover the costs of sales tax and title fees, whereby the insured must first provide proof that she has purchased or leased a replacement vehicle, this is not true. Defendants omit from their brief that portion of Section 919.80(c)(3)(A)(i) which states that an automobile insurer "may directly pay the required amounts of sales taxes and transfer and title fees to the insured at the time of settlement." In other words, Section 919.80(c)(3)(A)(i) explicitly contemplates automobile insurers paying mandatory replacement taxes and fees without requiring an insured to provide proof that she purchased or leased a replacement vehicle.

2

Here, Defendants promised to pay Plaintiff the cost of mandatory replacement taxes and fees in the event of a total loss, and they did not make that promise contingent on Plaintiff providing proof of purchase.[2] Defendants, theoretically, could have presented Plaintiff with a policy that allowed them to defer the payment of tax and fees until after Plaintiff provided proof that she purchased or leased a replacement vehicle. But they did not do so. Because Defendants failed to pay Plaintiff the cost of mandatory replacement taxes and fees, *a fact that Defendants do not dispute*, Defendants breached their Policy contract with Plaintiff.

## LEGAL STANDARD

"A complaint will survive a 12(b)(6) motion if, after the court disregards any portions that are 'no more than conclusions,' it 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

## ARGUMENT

Plaintiff alleges a breach of contract, not a violation of ILL. ADMIN. CODE tit. 50 § 919.80(c)(3)(A)(i). Defendants' argument that they did not violate ILL. ADMIN. CODE tit. 50 § 919.80(c)(3)(A)(i) is a red herring. Plaintiff's breach of contract claim simply requires the court to interpret Defendants' policy language and to determine whether they fulfilled their *contractual* obligations to Plaintiff.

**I.  PLAINTIFF HAS ADEQUATELY PLEADED BREACH OF CONTRACT.**

To recover for breach of contract under Illinois law, "a plaintiff must prove (1) the existence of a contract; (2) plaintiff performed all contractual obligations; (3) facts constituting a

---

[2] There is no evidence, and certainly nothing in Plaintiff's Complaint, which suggests that Defendants would have paid mandatory replacement costs even if Plaintiff had produced a proof of purchase.

3

breach; and (4) damages from the breach." *Storino, Ramello & Durkin v. Rackow*, 45 N.E.3d 307, 312 (Ill. App. Ct. 2015). Here, Defendants only argue that Plaintiff has not alleged facts constituting a breach. Defendants' argument fails because Plaintiff alleges that Defendants promised to pay sales tax and title transfer fees, but failed to do so.

### A. Defendants Promised to Pay Sales Tax and Title Transfer Fees.

Plaintiff alleges that Defendants' policy included a promise to pay sales tax and title fees in the event Defendants determined Plaintiff's vehicle to be a total loss. (Compl. ¶¶ 37-40.) Specifically, Plaintiff alleges that Defendants' policy (attached as Exhibit A to Compl.) promised to pay the "actual cash value of the vehicle" in the event of a total loss, and defined "actual cash value" as "the amount it would cost, at the time of loss, to buy a comparable vehicle." (*Id.* ¶¶ 26-31.) Plaintiff further alleges, citing the relevant statutory provisions, that sales tax and title fees are mandatory vehicle replacement costs in Illinois. (*Id.* ¶¶ 34-36.) Accordingly, Plaintiff alleges that sales tax and title fees are costs that must be incurred to buy a comparable vehicle, and are thus encompassed by Defendants' definition of "actual cash value." (*Id.* ¶ 37.)

Plaintiff's interpretation of "actual cash value" is consistent with other courts' interpretation of the term. *See, e.g., Roth v. Geico Gen. Ins. Co.*, 2018 WL 3412852 (S.D. Fla. June 14, 2018) (holding that the term "actual cash value," as used in an automobile insurance policy, encompasses the costs of sales tax and title transfer fees); *Bastian v. United Servs. Auto. Ass'n*, 137 F. Supp. 3d 1272 (M.D. Fla. 2015) ("actual cash value" as used in automobile insurance policy encompasses the cost of sales tax). Moreover, Defendants do not dispute sales tax and title fees are mandatory vehicle replacement costs in Illinois, or that such mandatory

4

costs are encompassed by their policies' definition of "actual cash value."[3]

### B. Defendants Failed to Pay Sales Tax and Title Fee, and Thus Breached Their Policy Contract With Plaintiff.

Plaintiff was involved in an accident, after which Defendants declared her vehicle to be a total loss. (Compl. ¶¶ 43-44.) Defendants' contractor, CCC, prepared a "Market Valuation Report" for Plaintiff's vehicle. (Attached as Exhibit C to Compl.) CCC's Market Valuation Report included a line item showing the applicable sales tax. Despite CCC recognizing that the cost of sales tax was part of the vehicle's value, Defendants failed to include the cost of sales tax in their actual cash value settlement payment to Plaintiff. (*Id.*) Further, although Defendants included the $25 cost of mandatory license plate transfer fees in their actual cash value settlement payment, Defendants failed to include the $95 cost of mandatory title transfer fees. (Compl. ¶¶ 35-36, 47.) Defendants thus breached their promise to pay Plaintiff the costs of sales tax and title transfer fees. (*Id.* ¶¶ 48-50.)

### C. Defendants' Policy Language Does Not Condition Payment of Actual Cash Value on Actual Replacement.

Plaintiff's policy (Ex. A to the Compl.) does not state that Plaintiff must prove that she purchased or leased a replacement vehicle before she is entitled to the payment of tax and mandatory fees. Defendants simply did not make that condition a part of the contract. (Compl. ¶ 32.) Rather, Defendants' policy promised to pay the costs necessary to buy a comparable vehicle.

---

[3] To the extent that there is genuine dispute over whether sales tax and title transfer fees qualify as costs to buy a replacement vehicle, under the language of Defendants' policies, that is a question of fact and cannot support dismissal of Plaintiff's Complaint. *See, e.g., Mee v. Safeco Ins. Co. of Am.*, 908 A.2d 344, 348 (Pa. Super. Ct. 2006) (whether a certain cost is "reasonably likely" to be incurred such that it is owed under an actual cash value policy is a factual question).

Plaintiff's allegation that the policy does not require proof of replacement prior to payment of the entire "actual cash value," including the mandatory tax and fees, is consistent with case law holding that the payment of actual cash value – including all components of replacement costs – is not conditioned on actual replacement. Interpreting Illinois law, the Seventh Circuit held that even when an insured asserts no intention to replace insured property – indeed, even when an insured intended to tear down and destroy the insured property prior to the loss – the insurer owes the costs to replace the property (minus depreciation), despite the fact such costs will not be incurred. *Knuppel v. Am. Ins. Co.*, 269 F.2d 163, 166 (7th Cir. 1959) ("Likewise the trial court was correct in its conclusion of law bearing on the intent or decision of the plaintiff to remove or tear down the insured structure. This was a collateral matter having no bearing on the actual cash value of the structure.") (citations omitted); *see also FSC Paper Corp. v. Sun Ins. Co.*, 1983 U.S. Dist. LEXIS 14658, at *10 (N.D. Ill. Aug. 12, 1983) (to receive payment under an actual cash value policy, "Plaintiff was not required by this provision to replace the [insured property.]") (opinion attached hereto as Exhibit A).[4]

Illinois law is consistent with that of other jurisdictions, which also hold that replacement is not a condition precedent to receive the full actual cash value of insured property. *See, e.g.*, *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("the Policy is clear that making the actual repairs first is not required in order to be paid the actual cash value of the

---

[4] In fact, Illinois courts recognize that the *entire point* of actual cash value policy provisions is that payment of actual cash value does not depend on actual replacement. In policies that include both actual cash value and replacement cost (i.e. without deduction for depreciation) provisions, the actual cash value provisions generally govern *unless and until there is actual replacement*. *See Nat'l Tea Co. v. Commerce & Indus. Ins.*, 119 Ill. App. 3d 195, 201 (Ill. App. Ct. 1983). In other words, by choosing actual cash value as the limit of liability, Defendants made the choice *not* to pay actual costs of replacement (without depreciation) and *not* to condition payment thereon.

damaged property."); *Nguyen v. St. Paul Travelers Ins. Co.*, 2008 WL 4534395, at *3 (E.D. La. Oct. 6, 2008) ("The plaintiffs are correct…they are entitled to payment of the actual cash value of their property before any repairs or replacement take place, and regardless if such measures are never taken."); *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 Fed. Appx. 955, 962-63 (6th Cir. 2005) ("Indeed, even if Parkway chooses not to repair its property at all, it would still be entitled to what it bargained for: the actual cash value of its loss[.]"); *Harrington v. Amica Mutual Insurance Co.*, 223 A.D.2d 222, 226 (N.Y. App. Div.1996) ("Plaintiff would have been entitled to recover the actual cash value from defendant even if a third party had completed the repairs at no cost to plaintiff."); *Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 2d 928, 935 (N.D. Tex. 2001) ("What plaintiff actually spent to repair his property--indeed, whether he repaired the property at all--does not affect his right to recover actual cash value.").

Defendants promised to pay the cost to purchase a comparable vehicle. They did not promise to pay the cost to purchase a comparable vehicle *only if insureds actually prove they purchased a vehicle*. Plaintiff's policy contains no conditions precedent, no proof-of-purchase requirement, and no language at all indicating that payment for the total-loss would deviate from the "actual cash value" of the vehicle, defined as the cost to purchase a comparable vehicle.[5]

## II. PLAINTIFF DOES NOT ALLEGE A VIOLATION OF THE ADMINISTRATIVE CODE.

Ignoring the policy language, Defendants argue that they did not breach the policy contract because they purportedly did not violate ILL. ADMIN. CODE tit. 50 § 919.80(c)(3)(A)(i). Plaintiff, however, does not allege that Defendants violated Section 919.80(c)(3)(A)(i). Thus,

---

[5] Defendants' argument that they payment of necessary replacement costs was contingent on receiving such proof is belied by the fact that Defendants paid Plaintiff the relatively small cost ($25) of the plate transfer fee, which is also a mandatory replacement cost. (Compl. ¶¶ 36, 47.)

7

Defendants' argument is not responsive to and has no bearing on the viability of Plaintiff's claim.

    **A.** **ILL. ADMIN. CODE tit. 50, § 919.80(C)(3)(A)(i) Sets Forth Minimum Standards.**

Part 919 of the Insurance Code explicitly asserts that it is setting *minimum* standards: "The purpose of this Part is to set forth ***minimum standards*** for the investigation and disposition of claims arising under contracts and certificates issued to residents of Illinois." ILL. ADMIN. CODE. tit. 50 § 919.20(b) (Scope and Purpose) (emphasis added). Insurers are thus free to provide broader coverage than what ILL. ADMIN. CODE tit. 50, § 919.80(c) requires. *See Ervin v. Travelers Pers. Ins. Co.*, 317 F. Supp. 3d 1014, 1018 (N.D. Ill. 2018) (holding that Illinois insurance law sets a minimum threshold for what fire-insurance policies must cover, and that "Insurers are free to provide broader coverage than [Illinois law] requires; what they may not do is provide less coverage.").

The essential requirement of Section 919.80(c)(3) is that automobile insurers pay sales tax and transfer fees in connection with total-loss claims. It describes two ways an insurer can do so in those instances (like here) when insurers pay a cash settlement. First, Section 919.80(c)(3)(A)(i) allows insurers to pay the sales tax and transfer fees actually incurred if the insureds provides documented proof of vehicle replacement within 33 days after receipt of settlement. If the insurer chooses to pay the sales tax upon proof of vehicle replacement, Section 919.80(c)(3)(A)(i) requires that insurers provide a specific notice of insureds' rights and obligations concerning the total-loss claims process, which informs the insured of their right to receive sales tax and transfer fees. *See* ILL. ADMIN. CODE tit. 50, § 919.80(c) ("When the insured vehicle has been determined a total loss…the company shall establish a procedure to provide the insured with, at a minimum, the information contained in Exhibit A of this Part."); ILL. ADMIN.

8

CODE tit. 50, § 919.80(c)(3)(A)(ii) (requiring the form for reimbursement to be provided with notice or at the time settlement); ILL. ADMIN. CODE tit. 50, § 919 Exhibit A (notice to be provided in the event of total loss).

Second, Section 919.80(c)(3)(A)(i) states that an insurer may pay the sales tax upfront – or at the initial point of settlement – rather than following the above "replacement" procedure. Specifically, it states: "In lieu of this reimbursement procedure, the company may directly pay the required amounts of sales taxes and transfer and title fees to the insured at the time of settlement." *Id*. **Defendants omit this portion of Section 919.80(c)(3)(A)(i) from their brief.**

Thus, Section 919.80(c)(3)(A)(i) does not mandate that insurers only pay the cost of sales tax and transfer fees upon proof of vehicle replacement. Rather, Section 919.80(c)(3)(A)(i) explicitly allows insurers to satisfy the requirement of paying sales tax and transfer fees immediately, without conditioning such payment on proof of vehicle replacement.[6] Here, Defendants promised to pay the cost of sales tax and transfer fees, and they did not condition such payment upon proof of vehicle replacement.

> **B. The Minimum Requirements of Section 919.80(c)(3)(A)(i) Do Not Absolve Defendants of Their Contractual Obligations.**

---

[6]The fact that Section 919.80(c)(3)(A) sets only *minimum* standards is seen not only in the timing element of one of the options set forth – i.e., allowing payment of sales tax only *after* incurred – but also in the amount of sales tax owed. Pursuant to Section 919.80(c)(3)(A), insurers are permitted to pay sales tax in an amount based on the *replacement* vehicle (up to and not to exceed the value of the total-loss vehicle) without running afoul of the law. In that scenario – where an insurer promises to pay only the amount incurred in actual replacement – if an insured's total-loss vehicle is valued at $20,000, but she replaces it with a vehicle worth $10,000, the insurer is permitted to promise to pay sales tax based on $10,000 (and not $20,000) without running afoul of the law. The other option explicitly mentioned in Section 919.80(c)(3)(A), of course, is to pay sales tax irrespective of and prior to any replacement. This is precisely what Defendants. The fact that Defendants arguably *could* have promised less than it did without running afoul of statutory requirements is irrelevant. Defendants are bound by the actual terms of their contract, not those terms that they hypothetically might have included.

Defendants are bound by their promise to pay sales tax and title fees, and they cannot use the bare minimum requirement of Section 919.80(c)(3)(A)(i) to lessen that obligation by imposing a condition-precedent on Plaintiff that does not appear in the policy. *See, e.g., Head v. Chicago Sch. Reform Bd. of Trs,*, 225 F.3d 794, 805 (7th Cir. 2000) (defendant breached employment contract even though it complied with statutory requirements because "Head's contract grants him greater rights than the Illinois School Code appears to grant him."); *Farm Bureau Mut. Ins. Co., Inc. v. Alamo Rent A Car, Inc.*, 744 N.E.2d 300, 305 (Ill. App. 1st Dist. 2000) (holding insurance statute requiring primary auto rental coverage was a minimum requirement: "[W]e cannot ignore the laws and public policy of the State, which permit freedom of contracting between competent parties . . .. Because the parties may properly contract as to which insurer is responsible for primary coverage as long as statutory minimum requirements are met, we hold that, as a matter of law, the rental agreement between Alamo and Fletcher was valid and enforceable."); *Ervin*, 317 F. Supp. 3d at 1018 (holding that Illinois insurance law sets a minimum threshold for what fire-insurance policies must cover, and that "Insurers are free to provide broader coverage than [Illinois law] requires; what they may not do is provide less coverage.") (citations omitted).

*Hertz Corp. v. Garrott*, 606 N.E.2d 219 (Ill. App. Ct. 1992) is instructive. *Garrott* concerned an Illinois statute requiring car rental agencies to include liability protection of $50,000 in the aggregate. *Id*. at 221. By contract, Hertz agreed to provide liability protection significantly in excess of the statutory requirements. *Id*. at 222. Due to the renter's misconduct, Hertz argued that its liability obligations were limited to the statutory requirement, and not the contractually agreed-upon amount. *Id*. The court disagreed, holding that:

> Nevertheless, we find that the statute merely prescribes the minimum amounts needed by a rental agency to conduct business in the State. The statute in no way defines the scope of the obligation that may be assumed by the rental agency by separate agreement. ***If Hertz wanted to provide liability protection at a level that would merely satisfy the minimum requirement under the statute, it was free to have done so in the contract. It did not choose to do so, however***.

*Id*. at 224 (emphasis added).

The same is true here. Section 919.80(c)(3)(A)(i) sets forth minimum requirements for the payment of sales tax and transfer fees. Like Hertz in the *Garrott* case, if Defendants wanted to provide coverage "that would merely satisfy the minimum requirement under the statute, [they] were] free to have done so *in the contract*." *Id.* at 224. But, like Hertz, Defendants chose not to do so. Rather than draft their policies such that the payment of sales tax and fees is conditioned on proof of vehicle purchase, Defendants simply promised to pay title fees and sales tax in the event of total loss. Defendants are bound by the terms of their policy, not by a lesser requirement found in the Administrative Code.

Defendants' argument that Section 919.80(c)(3)(A)(i) is incorporated by law into the policy is unavailing because that section provides an insured with the option to pay sales tax and title fees: (a) immediately or (b) on proof of vehicle replacement. Defendants' contractual promise to directly pay sales tax and title fees, without proof of vehicle replacement as a condition precedent, is completely consistent with Section 919.80(c)(3)(A)(i). As the cases cited above make clear, in Illinois, the minimum standards prescribed by statute do not determine a party's contractual obligations, and parties, including insurers, are free to contract to provide greater protection or broader coverage than those minimum requirements.

*Bastian*, 137 F. Supp. 3d 1272 is on all fours with this case. *Bastian* involved Florida law, which, like Illinois law: (a) requires payment of sales tax and (b) allows insurers to condition payment on replacement of the total-loss vehicles. *See* Fla. Stat. § 626.9743. In

11

*Bastian*, Defendant USAA provided the plaintiffs a virtually identical policy to the one at issue here, defining "actual cash value" as the cost to replace the total-loss vehicle with a comparable vehicle, with no policy language conditioning payment on replacement. *Id.* at 1276 (defining "actual cash value") and 1282 ("USAA has not elected the option [to condition payment of sales tax on replacement] . . . At best, the Policy says nothing on the topic, **which the Court should construe in favor of the insured**."). Further, USAA's policy at issue in *Bastian*, as here, included a clause stating that the policy conformed to applicable statutes,[7] which USAA, as it does here, argued allowed it to pay sales tax only after it was incurred by insureds. *Id.* at 1280 ("USAA now argues that the Policy should be read with section 626.9743(9) as an essential component of the Policy…USAA contends that Florida courts will incorporate statutory provisions…where the policy is otherwise silent so that USAA may pay only incurred sales tax.").

In *Bastian*, the court rejected USAA's argument, stating that it read the relevant statutory provision "to allow, but not require, insurers to choose in their policies to pay sales tax as incurred." *Id.* at 1283. The *Bastian* court further stated that it "***sees nowhere in the Policy where USAA could be said to have chosen this option***." *Id.* (emphasis added). Thus, the court rightly recognized that USAA is bound by its chosen policy language and could not escape

---

[7] Although Defendants cite to their policy's conforming clause as evidence that the policy promises to pay sales tax and transfer fees only if incurred (Defs.' Mem. at 3), the policy states that the conforming clause applies only when the terms of the policy "conflict" with Illinois law. (Ex. A to Compl. at 23.) Here, there is no conflict between Defendants' policy and Section 919.80(c)(3)(A)(i), which expressly permits what Defendants promise—payment of sales tax and transfer fees based on the value of the total-loss vehicle, irrespective of replacement. Thus, the conforming clause is irrelevant—there is no conflict triggering reformation or amendment of the policy promise. *Medina v. Public Storage, Inc.,* 2014 WL 1715517, at *31 (N.D. Ill. Apr. 30, 2014) (finding a conformity clause irrelevant because "[a] predicate for operation of the conformity clause is a 'conflict' with state law.").

liability by appealing to a statute setting forth minimum requirements for the payment of sales tax.

Similarly, in *Roth*, 2018 WL 3412852, GEICO argued that Fla. Stat. § 626.9743 trumped its policy language and allowed it to pay sales tax in the amount incurred. The court disagreed, granting summary judgment to the plaintiff and a certified class of Florida plaintiffs: "GEICO's reliance on Fla. Stat § 626.9743(9) is unavailing, as **that statute cannot limit coverage to less than what is provided for in the Policy**." *Id.* at *4, n. 5 (emphasis added).

As in *Bastian* and *Roth*, Plaintiff alleged that Defendants contractually promised to pay replacement costs (including sales tax and title fees) and that the policy does not condition payment of those costs on insureds replacing their vehicles and incurring the costs. (Compl. ¶¶ 3-5, 31-35, 65-82). Because Defendants did not pay Plaintiff her total replacement costs in this total loss situation, they breached their contract with Plaintiff.

### C. There is No Evidence Defendants Complied with the Statute.

Finally, as set forth above, the Administrative Code requires that, if an insurer elects to pay sales tax and transfer fees as incurred, it must provide an insured a legally required notice, stating a right to sales tax and transfer fees, as well as the form by which insureds provide proof of replacement and procure reimbursement of the sales tax and transfer fees. Here, there is no evidence, and nothing in the Complaint, which shows that that Defendants provided Plaintiff the notice or the form. In other words, there is no showing that Defendants even complied with portion of Section 919.80(c)(3)(A)(i) on which they rely.

But even if Defendants had provided the notice and form, it would have no bearing on Plaintiff's claim. Plaintiff alleges that Defendants promised payment of sales tax and title transfer fees upon the occurrence of a total loss, without requiring Plaintiff to first submit

13

documentary proof that she purchased a replacement vehicle, and that Defendants failed to fulfill that promise.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

Dated: June 4, 2019                                                       Respectfully submitted,

/s/ Adam J. Levitt
Adam J. Levitt
Daniel R. Ferri
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com

Edmund A. Normand*
Jacob Phillips*
**NORMAND LAW, PLLC**
62 West Colonial Street, Suite 209
Orlando, Florida 32814
Telephone: 407-603-6031
ed@ednormand.com
jacob@ednormand.com

Andrew J. Shamis
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com

Scott Edelsberg
Jordan D. Utanski
**EDELSBERG LAW, PA**
2875 NE 191st ST #703
Aventura, Florida 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com
utanski@edelsberglaw.com

15

                                            ***Counsel for Plaintiff***
                                            ***and the Proposed Class***

\* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 4, 2019, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

                                                                                */s Daniel R. Ferri*
                                                                                Daniel R. Ferri