IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALAIKA COLEMAN, Individually and on Behalf of All Others Similarly Situated, ) ) ) Plaintiff, ) ) v. ) ) GARRISON PROPERTY & CASUALTY ) INSURANCE CO. and UNITED SERVICES ) AUTOMOBILE ASSOCIATION, ) ) Defendants. ) ) | Case No. 1:19-cv-01745<br><br>The Honorable Virginia M. Kendall |

# DEFENDANTS' REPLY BRIEF IN SUPPORT OF
# MOTION TO DISMISS COMPLAINT

## INTRODUCTION

Defendants' Motion to Dismiss demonstrated that they have no obligation to pay sales tax or transfer fees to an auto insured unless and until the insured (1) purchases or leases a replacement for the totaled vehicle within 30 days and (2) substantiates that purchase or lease and the applicable taxes and fees actually incurred. (Dkt. 21 at 3, 6.) Defendants' auto insurance policy does not require the payment of sales tax or transfer fees at all, so the only possible basis for such an obligation is the Illinois insurance regulation, which is "automatically incorporated" into the terms of every Illinois auto policy. (*Id.* at 6.) Under Illinois law, however, the obligation to pay sales tax or transfer fees does not arise until the insured timely purchases or leases a replacement vehicle, actually incurs sales taxes and transfer fees, and substantiates that transaction for the insurer. (*Id.* at 3.)

In her opposition brief, Plaintiff does not contend that she purchased or leased a replacement vehicle after her insured vehicle was totaled. Instead, her argument for payment of sales taxes and fees that she never incurred consists largely of citations to cases from other jurisdictions involving different statutes, types of insurance policies, and types of losses. What Plaintiff does not cite is a recent decision by Judge Mihm, which examined the applicable *Illinois* law and held that auto insurers are not obligated to pay sales tax or transfer fees unless the insured purchases a replacement vehicle and *actually incurs* sales tax and/or transfer fees. *Sigler v. GEICO Cas. Co.*, No. 1:18-cv-01446-MMM-JEH, 2019 WL 2130137 (C.D. Ill. May 15, 2019) (Mihm, S.J.). Judge Mihm's decision was issued two days after Defendants filed their Motion to Dismiss, but nearly three weeks before Plaintiff filed her opposition brief. Plaintiff's failure to cite Judge Mihm's on-point decision in *Sigler* is even more curious given that Plaintiff's counsel here are counsel for the plaintiff in *Sigler*. Plaintiff's counsel made the very same arguments in *Sigler* that they do here, and Judge Mihm correctly rejected them.

The plain language of Plaintiff's insurance policy and the Illinois regulation do not require Defendants to pay Plaintiff sales tax or transfer fees, because she does not contend that she purchased or leased a replacement vehicle. Accordingly, Defendants respectfully request that this Court grant their Motion and dismiss this case with prejudice.

## ARGUMENT

**I. Defendants Have No Obligation to Pay Sales Tax or Transfer Fees Unless and Until an Insured Purchases a Replacement Vehicle.**

Judge Mihm's ruling in *Sigler* dismissed the very same type of claim, and rejected the very same legal arguments, that Plaintiff makes here. *Sigler*, 2019 WL 2130137, at *3-4; *compare Sigler v. GEICO Cas. Co.*, No. 1:18-cv-01446-MMM-JEH (C.D. Ill. Mar. 26, 2019),

Dkt. 22 at 3-4, 7-12 with Coleman Dkt. 25 at 3-14.[1] Judge Mihm ruled that Illinois law is very clear that an auto insurer is under no obligation to pay sales tax or transfer fees unless and until the insured *actually incurs* such taxes and fees and submits proof of purchase or lease of a replacement vehicle:

> Plaintiff cannot possibly demonstrate that the Defendants breached the contract as alleged. The Plaintiff never claims that he incurred sales tax, title transfer fees, or tag transfer fees expenses in the wake of settling his total loss claim. Therefore, the Defendants are under no obligation to pay such taxes and fees. *This obligation only arises for insurers after cash settlements when the insured has purchased or leased a vehicle.* Ill. Admin. Code. tit. 50, § 919.80(c)(3)(A)(i).

Sigler, 2019 WL 2130137, at *3 (emphasis added).

Judge Mihm also rejected the plaintiff's claim that the insurance policy there—which, like Plaintiff's policy here, capped an insured's recovery at the replacement cost of the insured vehicle—gives an insured the right to the payment of sales taxes and transfer fees that the insured never actually incurred:

> Nothing in the plain language of the policy can reasonably be construed as an express promise to insureds that they will be reimbursed for sales tax, title transfer fees, and tag transfer fees without first incurring such costs. The Plaintiff is clearly entitled to the actual cash value of his vehicle. The fact that actual cash value is defined, in part, as "the replacement cost" in the policy, does not entitle him to a theoretical reimbursement. The claim is simply too speculative.

Id.

Sigler squarely addresses the precise situation here and provides further support for Defendants' arguments. Defendants respectfully submit that this Court should adopt Judge Mihm's reasoning and ruling.

---

[1] In Sigler, Plaintiff's counsel declined the opportunity to file an amended complaint and instead agreed to entry of a final judgment in order to file an appeal to the Seventh Circuit. Sigler v. GEICO Cas. Co., No. 1:18-cv-01446-MMM-JEH (C.D. Ill. June 6, 2019), Dkt. 24; Sigler v. GEICO Cas. Co., No. 1:18-cv-01446-MMM-JEH (C.D. Ill. June 7, 2019), Dkt. 25.

**II. Plaintiff's Arguments Misstate Illinois Law and the Terms of Plaintiff's Auto Insurance Policy.**

Plaintiff's argument that she is entitled to the payment of sales tax and transfer fees that she never incurred is contrary to the plain terms of her insurance policy and the Illinois regulation.

**A. Defendants' Auto Policy Does Not Require Payment of Sales Tax and Transfer Fees in the Event of a Total Loss.**

Plaintiff's argument hangs on her contention that Defendants' auto policy somehow creates a broader obligation than that required by the Illinois regulation. (Dkt. 25 at 4-5.) But there is no dispute that the auto policy nowhere states that Defendants are obligated to pay sales tax and transfer fees in the event of a total loss. Instead, Plaintiff asserts that Defendants' policy *impliedly* requires payment of sales tax and transfer fees. Plaintiff contends that Defendants' duty is to pay the "actual cash value" of the vehicle, which is defined, in part, as "the amount it would cost, at the time of loss, to buy a comparable vehicle." (*See* Dkt. 25 at 1 ("USAA promises to pay the 'actual cash value' of the insured vehicle in the event of a total loss."); Compl., Ex. A (Dkt. 1-1) at ECF p. 25.) Plaintiff argues that sales tax and transfer fees are part of the amount it would cost to buy a comparable vehicle. (*Id.* at 4-5.)

Plaintiff misreads her insurance policy.

First, "actual cash value" is not what Defendants are obligated to pay in the event of a total loss. "Actual cash value" is the "*Limit of Liability*" for total losses:

**LIMIT OF LIABILITY**

A. Total loss to **your covered auto**. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any custom equipment.

(Compl., Ex. A (Dkt. 1-1) at ECF pp. 38-39 (emphasis in original).)

4

Instead, Defendants' obligation to pay is defined by the *Insuring Agreement*. For Collision Coverage (the coverage applicable to Plaintiff's claim), Defendants' obligation is to pay for "**loss**," which is defined as "direct and accidental damage to the vehicle":

**INSURING AGREEMENT**

B. Collision Coverage. **We** will pay for **loss** caused by **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

**DEFINITIONS**

D. "**Loss**" means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** . . . . **Loss** includes a total loss, but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any loss of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

(*Id.* at ECF pp. 25-26 (emphasis in original).) Nowhere in the policy is "loss" defined to include the payment of sales tax and transfer fees.

Second, even if there were a requirement under the policy to pay sales tax and transfer fees, nothing in the policy identifies *when* those taxes are to be paid and *how*. Those issues are addressed in the Illinois insurance regulation, whose requirements Plaintiff indisputably cannot satisfy here.

Accordingly, nothing in the policy obligates Defendants to pay for sales tax and transfer fees—indeed, those words do not appear anywhere in the policy—and there certainly is no obligation to pay taxes and fees when the insured did not actually incur them. The obligation to pay sales tax and transfer fees flows only from the Illinois regulation, which, as demonstrated below, requires reimbursement of such taxes and fees only when the insured actually incurs those costs through the purchase of a replacement vehicle.

5

**B.	Illinois Law Conditions Payment of Sales Tax and Transfer Fees Upon the Purchase of a Replacement Vehicle.**

As Defendants demonstrated in their Opening Brief, the Illinois regulation requires insurers who chose to make a cash settlement to pay sales tax and transfer fees only when the insured actually "incur[s]" such taxes and fees through the purchase of a replacement vehicle, and only under the following conditions:

1. The insured must purchase or lease a replacement vehicle "within 30 days after the receipt of the settlement" and "incur[ ] . . . applicable sales taxes and transfer and title fees."

2. If the insured purchases a vehicle with a market value less than the amount of the settlement, "the company is required to reimburse only the amount of the applicable sales tax and transfer and title fees incurred by the insured."

3. The insured must "substantiate" both (a) the purchase of the replacement vehicle and (b) "the payment of such taxes and fees" by "submission to the company of appropriate documentation within 33 days after the receipt of settlement." If the insured fails to do so, "the company shall not be required to reimburse the insured for the sales taxes or transfer or title fees."

Ill. Admin. Code tit. 50, § 919.80(c)(3)(A)(i).

Plaintiff does not dispute that she is not entitled to sales tax and transfer fees under the above provisions. Instead, she cites a provision that "[i]n lieu of this reimbursement procedure, the company may directly pay the required amounts of sales taxes and transfer and title fees to the insured at the time of the settlement." *Id.*; *see* Dkt. 25 at 9. This provision is irrelevant: it is clearly permissive, not mandatory ("the company *may*"), and Plaintiff nowhere alleges that Defendants chose to use this procedure.

### C. Plaintiff's Reliance on Non-Illinois Authorities Is Without Merit.

As Defendants have noted, Plaintiff nowhere cites Judge Mihm's decision in *Sigler* applying Illinois law to Plaintiff's precise situation. Instead, she cites to decisions not addressing Illinois law or the collision coverage at issue here.

Most of Plaintiff's cases deal with homeowners' insurance or other types of losses, which involve different policy provisions and applicable statutes.[2] The only cases Plaintiff cites involving an auto insurer's obligation to pay sales tax and fees in the event of a total loss are from Florida. *See Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284 (M.D. Fla. 2015); *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-Civ-DIMITROULEAS, 2018 WL 3412852 (S.D. Fla. June 14, 2018). The applicable Florida statute, however, does not include the conditions that Illinois has chosen to impose on the reimbursement of such taxes and fees. *See* Fla. Stat. § 626.9743(5)(a), (9). Unlike the Florida statute, the Illinois regulation provides for a strict time limit and documentation requirement for reimbursement of such taxes and fees (the insured must purchase or lease a vehicle within 30 days from the date of the total loss settlement, and provide sufficient documentation of the payment of taxes and fees within 33 days), and the Illinois regulation contains an additional provision, not found in the Florida statute, making clear that if the insured purchases a replacement vehicle at a lower value than the insured vehicle, the amount

---

[2] *See Mee v. Safeco Ins. Co. of Am.*, 908 A.2d 344 (Pa. Super. Ct. 2006) (homeowners' insurance policy); *Knuppel v. Am. Ins. Co.*, 269 F.2d 163 (7th Cir. 1959) (fire insurance policy); *FSC Paper Corp. v. Sun Ins. Co.*, No. 81 C 272, 1983 U.S. Dist. LEXIS 14658 (N.D. Ill. Aug. 12, 1983) (fire insurance policy); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008) (mobile home insurance policy); *Nat'l Tea Co. v. Commerce & Indus. Ins.*, 456 N.E.2d 206 (Ill. App. Ct. 1983) (fire insurance policy); *Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2008 WL 4534395 (E.D. La. Oct. 6, 2008) (fire insurance policy); *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F. App'x 955 (6th Cir. 2005) (commercial property insurance policy); *Harrington v. Amica Mut. Ins. Co.*, 223 A.D.2d 222 (N.Y. App. Div. 1996) (homeowners' insurance policy); *Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 2d 928 (N.D. Tex. 2001) (commercial property insurance policy).

of sales tax and fees reimbursed is calculated based on the price of the lower-valued vehicle. *See supra* p. 6. Thus, unlike the Florida statute, the Illinois regulation is focused in multiple ways on not requiring insurers to pay insureds any more than they *actually incurred* in sales tax and transfer fees. *See Sigler*, 2019 WL 2130137, at *3.

Furthermore, the courts in the Florida cases chose not to import the Florida statute into the insurers' respective policies. *See Bastian*, 150 F. Supp. 3d at 1295; *Roth*, 2018 WL 3412852, at *4 n. 5. In Illinois, however, "Illinois laws are *automatically* incorporated into all contracts of insurance in that state." *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 967 (7th Cir. 2000) (emphasis added); *see* Dkt. 21 at 6 (citing cases). The cases Plaintiff cites are inapposite, as they involved contractual provisions that explicitly went beyond minimum legal requirements.[3]

### D.   Plaintiff's New-Found "Notice" Argument Is Without Merit.

After repeatedly denying that she is relying on the Illinois regulation for her contract claim (Dkt. 25 at 2, 3, 7-13), Plaintiff does an about-face at the end of her brief and contends that there is "no evidence" that Defendants complied with a separate notice provision in the regulation. (*Id.* at 13.) This assertion fails on multiple levels: Plaintiff has no private right of action for enforcement of this notice provision;[4] Plaintiff never alleges that Defendants failed to

---

[3] *See Head v. Chicago Sch. Reform Bd. of Trs.*, 225 F.3d 794 (7th Cir. 2000) (Permissive statutory provision did not create separate grounds for removal of school principal where employment contract explicitly specified five grounds for removal.); *Farm Bureau Mut. Ins. Co., Inc. v. Alamo Rent A Car, Inc*. 744 N.E.2d 300 (Ill. App. Ct. 2000) (Statute that was silent on primary coverage for rental cars did not alter coverage under auto insurance provision that explicitly covered "rented auto[s]."); *Ervin v. Travelers Pers. Inc. Co.*, 317 F. Supp. 3d 1014 (N.D. Ill. 2018) (Fire insurance policy explicitly provided for less coverage than mandated by law.); *Hertz Corp. v. Garrott*, 606 N.E.2d 219 (Ill. App. Ct. 1992) (Policy explicitly promised liability protection in amounts of $100,000 per person, $300,000 per accident, and $25,000 for property damage, in excess of $50,000 statutory requirement).

[4] The administrative code regulations governing insurance claims practices do not provide for a private right of action, but instead leave enforcement to the Illinois Department of Insurance. *See Weis v. State Farm Mut. Auto. Ins. Co.*, 333 Ill. App. 3d 402, 406, 776 N.E.2d 309, 311 (Ill. App.

comply with that provision; and Plaintiff does not allege any cognizable injury resulting from any such failure. Nowhere does Plaintiff allege that she was unaware of the information or that she somehow was injured as a result of an alleged failure to provide notice. *See, e.g.*, [Reger Dev., LLC v. Nat'l City Bank, No. 08 C 6200, 2009 WL 1233898, at *2 (N.D. Ill. Apr. 28, 2009) (Kendall, J.)](#) (breach-of-contract claim requires proof of injury proximately resulting from breach).

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiff's Complaint with prejudice.

Dated: June 11, 2019

Respectfully submitted,

/s/ *Jay Williams*
Jay Williams
Paula M. Ketcham
Kirstie Brenson
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
jwilliams@schiffhardin.com
pketcham@schiffhardin.com
kbrenson@schiffhardin.com

---

[Ct. 2002)](#) ("The enforcement of the insurance rules was clearly delegated to the Department of Insurance, and, as such, we conclude that a plaintiff cannot plead or pursue a private cause of action based on an insurer's violation of these rules.").

## **CERTIFICATE OF SERVICE**

    I hereby certify that on Tuesday, June 11, 2019, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

                                                    */s/ Jay Williams*
                                                    Jay Williams