IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALAIKA COLEMAN, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>  v.<br><br>GARRISON PROPERTY & CASUALTY INSURANCE CO. and UNITED SERVICES AUTOMOBILE ASSOCIATION,<br><br>   *Defendants*. | No. 19 C 1745<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Defendants Garrison Property & Casualty Insurance Co. ("Garrison") and United Service Automobile Association ("USAA") (together, "Defendants") move to dismiss the complaint under Rule 12(b)(6) for failure to state valid breach of contract claims. For the reasons stated below, the Court grants Defendants' Motion to Dismiss [Dkt. 20].

## BACKGROUND

Plaintiff Malaika Coleman brings this action individually and on behalf of two classes against her car insurance provider. Plaintiff totaled her car and sought reimbursement from her insurer. She alleges she was harmed because her insurer did not include the costs of sales tax and title transfer fees in the reimbursement. Plaintiff alleges that Defendants' failure to pay those costs is a breach of her insurance

1

agreement. (Dkt. 1 ¶¶ 1-5.) Plaintiff's two-count complaint includes a breach of contract claim against each Defendant. (*Id.* ¶¶ 62-82.) Defendants move to dismiss Plaintiff's individual claims only and note that the "putative class claims are not at issue" in the motion. (Dkt. 21 at 4.)

Plaintiff had car insurance through Defendants for her 2006 Chrysler 300. (Dkt. 1 ¶¶ 26, 42.) On September 7, 2018, Plaintiff was involved in an accident while driving her car and filed a property damage claim with Defendant Garrison. (*Id.* ¶ 43.) Defendants determined that Plaintiff's car was a total loss with a base value of $3,466.00. (*Id.* ¶ 44.) Defendants paid Plaintiff that amount plus a $25 license/tag transfer fee, but did not pay her the costs of sales tax ($216.25) or title transfer fees ($95). (*Id.* ¶¶ 47-49.)

Plaintiff's USAA insurance policy provides that Defendants will pay for each "loss" to a covered auto. (*Id.* ¶ 26; *see also* Dkt. 1-1 at 26.) The policy defines "loss" as "direct and accidental damage," which "includes a total loss, but does not include any damages other than the cost to repair or replace." (*Id.* ¶ 28; *see also* Dkt. 1-1 at 25.) The limit of USAA's liability for loss is "the actual cash value of the vehicle," which the policy defines as "the amount it would cost, at the time of loss, to buy a comparable vehicle." (*Id.* ¶¶ 29-30; *see also* Dkt. 1-1 at 25.) The policy does not define "actual cash value" as excluding the costs of sales taxes or title fees. (*Id.* ¶ 32.) Plaintiff alleges that Defendants breached their agreement by not including the costs of sales tax or title transfer fees in the "actual cash value" payment for her total loss. (*Id.* ¶¶ 37-38, 50.)

## **STANDARD OF REVIEW**

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original).

The Court construes the complaint and attached exhibits "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds*, 623 F.3d at 1146. "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678). "Where an exhibit and the complaint conflict, the exhibit typically controls." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). "A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Id.*

3

## DISCUSSION

Defendants argue that Plaintiff's breach of contract claims fail because Defendants are not obligated to pay Plaintiff's sales tax and title fees. Defendants argue that nothing in the policy requires them to pay those costs and that they are not required to do so as a matter of Illinois law.

### I. Plaintiff's Insurance Policy

To succeed on her breach of contract claims, Plaintiff must demonstrate 1) the existence of a valid contract, 2) that she substantially performed her obligations, 3) that defendant breached, and 4) resulting damages. *Dual-Temp of Ill., Inc. v. Hench Control, Inc.*, 821 F.3d 866, 869 (7th Cir. 2016). "A breach can only exist where a party fails to carry out a term, promise, or condition of a contract." *Officemax, Inc. v. NHS Human Servs., Inc.*, No. 16 C 9111, 2017 WL 1022078, at *2 (N.D. Ill. March 15, 2017) (citations omitted). The only element at issue in Defendants' motion is whether Plaintiff adequately pleaded a breach.

Plaintiff argues that Defendants promised to pay her the "actual cash value" for her totaled car, which she argues includes sales tax and title transfer fees. The only policy provision Plaintiff cites to support her theory is the one defining "actual cash value" as "the amount it would cost, at the time of loss, to buy a comparable vehicle." (Dkt. 1 ¶ 37; *see also* Dkt. 25 at 4.) Plaintiff alleges that sales tax and title fees are "necessary and mandatory vehicle replacement costs in the State of Illinois," citing the relevant Illinois statutes (*see* Dkt. 1 ¶ 34), and concludes that because those

4

taxes and fees are "necessary and mandatory," they must be included in the policy's definition of "the amount it would cost . . . to buy a comparable vehicle."

Defendants argue that "actual cash value" is not the relevant provision, because it is the limit of their liability, not the amount they promised to pay. And even if Defendants are required to pay Plaintiff the "actual cash value," they argue that the policy does not include sales tax and title transfer fees in that amount.

Defendants are correct on both accounts. First, Plaintiff puts too much emphasis on the definition of "actual cash value" in the policy. As Defendants point out, the policy states, that the "actual cash value" of a comparable vehicle is the limit on Defendants' liability—not the amount that Defendants promised to pay her. (*See* Dkt. 1-1 at 38-39) ("Our limit of liability under Comprehensive Coverage and Collision Coverage [in the event of total loss to Plaintiff's vehicle] is the actual cash value of the vehicle"). Indeed, Plaintiff alleges as much. (*See* Dkt. 1 ¶ 29) ("The [policy] represents that the limit of [Defendants'] liability for loss . . . is 'the actual cash value of the vehicle'"). Defendants actually promised to pay Plaintiff "for loss caused by collision," (*see* Dkt. 1-1 at 26), which Plaintiff alleges as well. (*See* Dkt. 1 ¶ 29) (alleging the policy provides that "Defendants will pay for each 'loss' to a 'covered auto.'") And "loss" means "direct and accidental damage," which "includes a total loss, but does not include any damages other than the cost to repair or replace." (Dkt. 1-1 at 25; *see also* Dkt. 1 ¶ 28.) Plaintiff does not point to any provision in the policy that requires Defendants to pay the "actual cash value" of her car for a total loss—that term is clearly defined as the limit of Defendants' liability, not an amount they are

5

obligated to pay. Nor does she point to any provision that defines "loss" or "total loss" to include sales tax and transfer fees.

Second, even if Defendants were obligated to pay Plaintiff the "actual cash value" of her car, her theory still would not hold water. Plaintiff's argument boils down to whether the policy's definition of "actual cash value" as "the amount it would cost, at the time of loss, to buy a comparable vehicle" includes sales tax and title transfer fees. Plaintiff claims it does; Defendants disagree. Plaintiff alleges that sales tax and title transfer fees are "necessary and mandatory" in Illinois, and argues they are included in her "vehicle replacement costs"—in other words, they are costs she incurs in order to replace her vehicle. But the policy does not define "actual cash value" as the amount it would cost Plaintiff to "replace" her vehicle—*i.e.*, to buy a comparable vehicle with clear title or a comparable vehicle plus sales tax. Instead, the policy defines "actual cash value" as "the amount it would cost, at the time of loss, to *buy*"—not replace—"*a comparable vehicle*." The definition goes on to state that a comparable vehicle "is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." (Dkt. 1-1 at 25.) The definition is thus limited to the purchase price of the vehicle itself and does not include attendant "replacement costs" like sales tax, title fees, registration fees, or the like. Nothing in the plain language of the policy provisions Plaintiff cites as the basis for her claims can reasonably be construed as an express promise to pay sales tax and title fees, and Plaintiff does not point to any other provisions in the policy that Defendants breached.

6

A recent case from the Central District of Illinois is instructive. The facts are largely identical—a putative class sued their car insurer for failing to include sales tax, title transfer fees, and tag transfer fees in reimbursement for total loss—and the plaintiff made many of the same arguments. *See Sigler v. GEICO Cas. Co.*, 18 C 1446, 2019 WL 2130137 (C.D. Ill. May 15, 2019). The relevant contract language in *Sigler* is different than the language here in one aspect—"actual cash value" was defined as "the replacement cost of the auto," rather than "the amount it would cost . . . to buy a comparable vehicle." *Compare Sigler*, 2019 WL 2130137, at *1, *and* Dkt. 1-1 at 25. Still, the *Sigler* court concluded that "the replacement cost of the auto" did not include the taxes and fees unless plaintiff could show that he actually incurred those costs, which he could not. *Id.* at *3 ("Nothing in the plain langu[age] of the policy can reasonably be construed as an express promise to insureds that they will be reimbursed for sales tax, title transfer fees, and tag transfer fees without first incurring such costs. . . . The fact that actual cash value is defined, in part, as 'the replacement cost' in the policy, does not entitle [plaintiff] to a theoretical reimbursement.") Though the language in the contract here, standing alone, could be construed to require reimbursement for costs that have not actually been incurred ("actual cash value" being defined as "the amount it *would* cost, at the time of loss, to buy a comparable vehicle"), as explained above, Plaintiff does not plead facts showing that Defendants promised to pay her the "actual cash value" of her car.

Plaintiff cites cases where other courts have found "actual cash value" to include additional replacement costs like sales taxes and title fees. But those cases are

7

nonbinding and largely inapposite. In two cases, Florida courts found that "actual cash value" included sales tax and title transfer fees, but the policies at issue in those cases defined "actual cash value" as "the replacement cost of the auto" or "insured vehicle." *Jones v. GEICO Gen. Ins. Co.*, No 17 C 891, 2019 WL 3254207, at *1 (M.D. Fla. July 19, 2019); *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942, 2018 WL 3412852, at *4 (S.D. Fla. June 14, 2018). Another Florida court found that "actual cash value" defined, like here, as the "cost . . . to buy a comparable vehicle" included sales tax, but the court based its holding in part on two factors not present here—the insurer's "long history of paying sales taxes on total losses, along with title and licensing fees" and Eleventh Circuit precedent holding that state and local taxes are part of the costs of replacing an item. *See Bastian v. United Servs. Auto. Assoc.*, 150 F. Supp. 3d 1284, 1289-90 (M.D. Fla. 2015).

## II.  Illinois Insurance Regulations

Defendants also argue that Plaintiff's claims fail as a matter of Illinois law. Part 919 of the Illinois insurance regulations provides that in the event of total loss, car insurers who elect to pay a cash settlement are required to "reimburse the insured for the applicable sales taxes and transfer and title fees incurred," but only if "the insured has purchased or leased a vehicle" within 30 days of receiving the cash settlement. Ill. Admin. Code tit. 50, § 919.80(c)(3)(A)(i). It further provides that "if the insured cannot substantiate such purchase and the payment of such taxes and fees" by submitting appropriate documentation, the insurer "shall not be required to reimburse the insured for the sales taxes or transfer or title fees." *Id.* It also provides

that the insurer "may directly pay the required amounts of sales taxes and transfer and title fees to the insured at the time of settlement." *Id.*

Defendants argue that the policy incorporates these regulations and that they are not required to pay Plaintiff the taxes or fees because she did not allege that she purchased or leased a vehicle within 30 days of receiving the settlement and thus did not comply with the regulation's requirements. Plaintiff argues that Section 919.80 is a red herring because her claims are based solely on the language of the policy and not on Defendants having violated this regulation. For purposes of this motion, Section 919.80 is a wash. Even if Defendants are correct that the policy incorporates Section 919.80, the regulation provides two possible options for insureds to receive reimbursement for the taxes and fees at issue, but neither option applies here. Plaintiff does not allege that she purchased or leased a vehicle within 30 days of receiving the cash settlement, so Defendants are not required to reimburse her for the taxes and fees under the first option. *See also Sigler*, 2019 WL 2130137, at *3 (the obligation to pay such taxes and fees "only arises for insurers after cash settlements when the insured has purchased or leased a vehicle") (citing Ill. Admin. Code tit. 50, § 919.80(c)(3)(A)(i)). Under option two, insurers "may" pay the taxes and fees at the time of settlement, but as explained above, Plaintiff has not shown any language in the policy that requires Defendants to do so.

## CONCLUSION

Because Plaintiff has not pleaded a necessary element of her breach of contract claims, the Complaint, including both the individual and putative class claims, is

dismissed without prejudice. *See Weismueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008) (If "the named plaintiff's claim becomes moot before the class is certified, the suit must be dismissed because no one besides the plaintiff has a legally protected interest in the litigation"); *see also Sigler*, 2019 WL 2130137, at \*4.

_____
Virginia M. Kendall
United States District Judge

Date: July 31, 2019