UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MALAIKA COLEMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GARRISON PROPERTY AND CASUALTY INSURANCE CO., and UNITED SERVICE AUTOMOBILE ASSOCIATION,<br><br>Defendants. | Civil Action No. 19-cv-01745<br><br>**JURY TRIAL DEMANDED** |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Malaika Coleman ("Plaintiff"), individually and on behalf of the other members of the below-defined USAA Class and Garrison Subclass (collectively, the "Class"), brings this class action against Garrison Property and Casualty Insurance Co. ("Garrison") and United Service Automobile Association ("USAA") (collectively, "Defendants"), and in support thereof states the following:

**I.    NATURE OF THE ACTION**

1.    Plaintiff was a customer of USAA, which issued Plaintiff an insurance policy for private passenger auto insurance including comprehensive and collision coverage through its alter ego, Garrison.

2.    When Plaintiff Coleman suffered a total loss of her vehicle, Defendants failed to pay her the full amount to which she was entitled under her automobile insurance policy. This was not an isolated incident. To the contrary, it is a fundamental component of Defendants' business practices.

3. Simply stated, Defendants have systematically underpaid its insureds—including Plaintiff and the other Class members—who have suffered the total loss of their vehicles, by failing to pay the cost of sales tax, despite being contractually obligated to pay such costs.

4. Defendants' Comprehensive and Collision coverages both provided for an "Actual Cash Value" payment in the event of total loss. Defendants' policies, including the policy issued to Plaintiff, define Actual Cash Value in its policies as "the amount it would cost…to buy a comparable vehicle."

5. As more fully discussed below, under Illinois law, sales tax is necessarily part of the amount it would cost to buy a comparable vehicle. Defendants failed to pay Plaintiff and the other Class members the amount necessary to cover sales tax when they suffered total losses of their vehicles, notwithstanding their contractual obligation to pay such costs. Defendants thus breached their contracts with Plaintiff and the other Class members.

6. As a result of Defendants' conduct, Plaintiff and the other Class members were damaged in an amount to be determined at trial.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states, and because (a) the Plaintiff is a member of the Class, which consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

8. Venue is proper in this District because a substantial portion of the acts and conduct giving rise to Plaintiff's claim occurred within the District and Defendants are subject to personal jurisdiction in this District.

### III. THE PARTIES

*Plaintiff*

9. At all times relevant to this action, Plaintiff Coleman is and was a citizen of the State of Illinois, domiciled in Cook County. Plaintiff received and entered into her contract with Defendants in Cook County.

*Defendants*

10. At all times material hereto, Defendant United Service Automobile Association is and was a foreign corporation incorporated in Texas, headquartered at 9800 Fredericksburg Road, San Antonio, Texas 78288, and authorized to provide insurance in the State of Illinois.

11. At all times material hereto, Defendant Garrison Property and Casualty Insurance Co. is and was a foreign corporation incorporated in Texas, headquartered at 9800 Fredericksburg Road, San Antonio, Texas 78288, and authorized to provide insurance in the State of Illinois.

### IV. FACTUAL BACKGROUND

**A.** *USAA's Corporate Structure*

12. USAA Casualty Insurance Co., USAA General Indemnity Co., and Garrison Property and Casualty Insurance Co. (collectively, the "USAA Brands") are all subsidiaries of United Service Automobile Association. Every USAA Brand is used by USAA to issue materially identical private passenger automobile insurance policies for property damage described herein.

13. USAA and the USAA Brands are all incorporated in Texas, are all headquartered at 9800 Fredericksburg Road, San Antonio, Texas 78288, and all are authorized to provide insurance in the State of Illinois.

14. USAA provides the policies, implements the underwriting, sets the premium rate, and determines the claims handling processes to be applied for each USAA Brand, including Defendant Garrison.

15. USAA and each USAA Brand, including Garrison, offers Illinois automobile insurance policies that include materially identical policy language, implement the same settlement practices and procedures, and conduct the same underwriting procedures.

16. There are no differences among USAA or any USAA Brand relating to claims handlers, adjusters, or underwriters. In other words, the same claims handlers and adjusters handle claims for USAA and the USAA Brands, and the same underwriters underwrite policies for USAA and the USAA Brands.

17. Simply stated, there are no material differences amongst USAA and the USAA Brands relating to contractual agreements with insureds, handling claims, and setting premiums. USAA drafts the policies used by the USAA Brands. USAA implements and imposes all procedures related to policies and claims, and does so identically across and among all USAA Brands.

18. Thus, USAA and the USAA Brands are engaged in a common scheme with respect to the calculation of Actual Cash Value payments for total loss automobile insurance claims in the State of Illinois.

19. The entity to which an insured is assigned depends on his or her status. For instance, military officers are placed within USAA, while third-generation offspring are placed within Garrison. Placement within a USAA entity is determined by USAA policies and procedures and is not a choice made by the insured.

20. Insureds first deal with USAA, which offers to provide an insurance policy in exchange for a given premium rate. If the customer accepts the offer, USAA then offers the insured an insurance contract through USAA or one of the USAA Brands.

21. For instance, consumers can solicit an insurance quote online, through a website owned, operated and controlled by USAA. If the consumer qualifies for insurance, USAA makes

an offer to that consumer—an insurance policy in exchange for a premium. If the consumer accepts that offer, USAA then provides an agreement bearing the name of USAA or a USAA Brand.

22. Similarly, consumers can solicit quotes over the phone. The telephone salespersons are employees and agents of USAA, not of any of the USAA Brands. The salesperson, if the consumer qualifies, makes an offer to the consumer—an insurance policy with certain terms in exchange for a premium. If the consumer accepts that offer, the consumer is then provided an agreement bearing the name of USAA or a USAA Brand.

23. In providing automobile insurance to Illinois insureds, the USAA Brands, including Garrison, all operate as alter egos of USAA.

24. The USAA Brands are all wholly-owned subsidiaries of USAA and there is a unity of interest and ownership between USAA and each of the USAA subsidiaries.

25. Treating USAA as a separate corporation from each of the USAA subsidiaries would promote injustice by allowing USAA to profit from its scheme to underpay on actual cash value policies, which it directs and facilitates through its USAA Brands subsidiaries, and where the benefits inure to USAA.

**B.** *The USAA Insurance Policy*

26. Plaintiff Coleman had automobile insurance through Defendants. Plaintiff Coleman's USAA policy (the "USAA Policy," a copy of which is attached as Exhibit A hereto) provides that for "Collision" and "Comprehensive" coverages, Defendants will pay for each "loss" to a "covered auto."

27. The USAA Policy defines "your covered auto" as any vehicle listed on the Declarations sheet included in the Policy.

28. The USAA Policy defines "Loss," with respect to "Collision" and "Comprehensive" coverage, as "direct and accidental damage to…your covered auto" and specifically states that "loss includes a total loss[.]"

29. The USAA Policy provides for payment, for loss, on an "actual cash value" or "cost to repair" basis.

30. The USAA Policy represents that the limit of USAA's liability for total loss, with respect to "Collision" and "Comprehensive" coverage, is "the actual cash value of the vehicle."

31. The USAA Policy states that vehicle will be declared a "total loss" if "the cost to repair it would be greater than its actual cash value minus its salvage value after the loss."

32. Thus, when USAA declares a vehicle a "total loss," it necessarily means that it has determined to pay for the loss on an "actual cash value" basis.

33. "Actual cash value" is defined in the USAA Policy, with respect to "Collision" and "Comprehensive" coverages, as "the amount it would cost, at the time of loss, to buy a comparable vehicle."

34. Under the USAA Policy, Defendants' legal obligation to pay Actual Cash Value on a first-party total loss claim does not differ between a Collision total loss claim and a Comprehensive total loss claim.

35. Significantly, the USAA Policy *does not* define Actual Cash Value as: (a) excluding the cost of taxes from Actual Cash Value; (b) deferring payment of the cost of taxes for any purpose whatsoever; (c) requiring an insured to obtain a replacement vehicle; or (d) requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving the cost of taxes.

36. Upon information and belief, each Class member was insured under USAA Policies that were materially identical to Plaintiff Coleman's USAA Policy with respect to the obligation

6

to pay "Actual Cash Value" in the event of a total loss. Upon information and belief, USAA drafts and implements substantively identical private passenger automobile insurance policies for USAA and the USAA Brands.

**C.** *Defendants Do Not Pay the Agreed-Upon Costs Necessary to Buy a Comparable Vehicle*

37. Sales tax is necessarily included in the amount it would cost to buy a comparable vehicle in the State of Illinois. *See* 35 ILCS 105/3.

38. By representing that they will pay Actual Cash Value in the event of a total loss, Defendants, through the USAA Policy, promise to pay the cost of sales tax as part of their Collision and Comprehensive coverages.

39. Defendants, however, have breached their contracts with Plaintiff and the other Class members by refusing to pay the cost of sales tax upon the total loss of an insured vehicle.

40. The aforementioned scheme—promising to pay the cost to buy a comparable vehicle but declining to actually do so—is a common scheme implemented by USAA in a uniform and identical manner across all USAA Brands.

**D.** *USAA and Garrison Failed to Pay Plaintiff the Actual Cash Value to Which He was Entitled*

41. Plaintiff Coleman owned a 2006 Chrysler 300, VIN # 2C3KA43R76H108843 (the "Insured Vehicle").

42. On or about September 7, 2018, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of that accident, Plaintiff filed a property damage claim with Defendant Garrison (Claim Number 028477371–002).

43. Following the filing of her claim, Defendants determined that Plaintiff's Insured Vehicle was a total loss with a value of $3,466.00. A copy of Defendants' Total Loss Explanation Letter to Plaintiff is attached as Exhibit B hereto.[1]

44. Defendants' Total Loss Explanation Letter stated that they were purportedly paying Plaintiff the "actual cash value" of her Insured Vehicle.

45. To determine the "actual cash value"[2] of the Insured Vehicle, Defendant relied on third-party vendor ("CCC"),[3] which specializes in calculating the cost to buy comparable vehicles with similar conditions and mileage.

46. CCC determined that the cost in Plaintiff's case to buy a comparable vehicle was $3,594.15, which included $334.15 for taxes. A copy of the Market Valuation Report is attached hereto as Exhibit C.

47. Defendants, however, paid Plaintiff and the other Class members only the "adjusted value" of their vehicles and a license/tag transfer fee of $25.00, and *did not* pay the costs of sales tax, which is, under applicable law, an inextricable part of a vehicle purchase.

48. Defendants failed to pay the costs of sales tax even though the Market Valuation Report determined that sales tax is a required sum to buy a comparable vehicle.

---

[1] Defendants initially determined that the base value was slightly lower. Plaintiff then pointed to features in the Insured Vehicle that were not reflected in the initial determination, and Defendants subsequently increased the base value.

[2] Defendants' responses to Frequently Asked Questions on its website confirms that the Market Valuation Report is used to "establish the actual cash value of your vehicle." *See* https://www.usaa.com/inet/wc/faq_PC_total_loss_claims_index?SearchRanking=1&SearchLinkPhrase=total%20loss (last visited August 19, 2019).

[3] USAA contracts with CCC to provide Market Valuation Reports for USAA and each USAA Brand, including Garrison. USAA then uses those Market Valuation Reports to determine the Actual Cash Value of insured vehicles, further indicating that USAA controls and implements the scheme at issue here.

49. The applicable state, county, and municipal combined tax rate for the purchase of a comparable vehicle was 10.25%.. *See* Ex C. Thus, Plaintiff was also owed sales tax in the minimum amount of $334.15.

50. Defendants breached their contract with Plaintiff by not including the cost of sales tax in making the Actual Cash Value payment for Plaintiff's total loss.

### V. CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

52. Plaintiff seeks to represent a class (the "USAA Class") defined as:

> All persons: (a) who insured a vehicle for physical damage coverage under an Illinois automobile insurance policy issued by USAA or any USAA Brand that provided for an Actual Cash Value payment in the event that a vehicle was declared a total loss, (b) who made a claim under the policy for physical damage, (c) whose claim was adjusted as a total loss within the ten-year time period prior to the date on which this lawsuit was filed until the date of any certification order, and (d) who were not paid the full total loss vehicle value ("TLVV") sales tax.

53. Plaintiff seeks to represent a subclass (the "Garrison Subclass") defined as:

> All persons: (a) who insured a vehicle for physical damage coverage under an Illinois automobile insurance policy issued by Garrison that provided for an Actual Cash Value payment in the event that a vehicle was declared a total loss, (b) who made a claim under the policy for physical damage, (c) whose claim was adjusted as a total loss within the ten-year time period prior to the date on which this lawsuit was filed until the date of any certification order, and (d) who were not paid the full total loss vehicle value ("TLVV") sales tax.

54. Excluded from the USAA Class and Garrison Subclass are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the USAA Class and Garrison Subclass definitions, as appropriate, during the course of this litigation.

55. This action has been brought and may properly be maintained on behalf of the Class and Subclass proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

56. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of the USAA Class and Garrison Subclass are so numerous that individual joinder of all Class and Subclass members is impracticable. While Plaintiff is informed and believes that there are thousands of USAA Class and Garrison Subclass members, the precise number of USAA Class and Garrison Subclass members is unknown to Plaintiff, but may be ascertained from Defendants' books and records. USAA Class and Garrison Subclass members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

57. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual USAA Class and Garrison Subclass members, including, without limitation:

   a. whether Defendants' contractual agreement to pay Actual Cash Value in the event of total loss obligated them to pay sales tax to Plaintiff and the other Class members;

   b. whether Defendants breached their contracts with Plaintiff and the other USAA Class and Garrison Subclass members; and

   c. the amount and nature of relief to be awarded to Plaintiff and the other USAA Class and Garrison Subclass members.

58. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other USAA Class and Garrison Subclass members' claims because Plaintiff and the other USAA Class and Garrison Subclass members were all similarly affected by Defendants'

failure to pay the cost of sales tax under Illinois insurance policies that provided for an Actual Cash Value payment in the event of total loss. Plaintiff's claims are based upon the same legal theories as those of the other USAA Class and Garrison Subclass members. Plaintiff and the other USAA Class and Garrison Subclass members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other USAA Class and Garrison Subclass members.

59. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate USAA Class and Garrison Subclass representative because her interests do not conflict with the interests of the other USAA Class and Garrison Subclass members who he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to include sales tax and title transfer fees in total loss situations, and Plaintiff intends to prosecute this action vigorously. The interests of the USAA Class and Garrison Subclass will be fairly and adequately protected by Plaintiff and her counsel.

60. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other USAA Class and Garrison Subclass members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the USAA Class and Garrison Subclass members as a whole.

61. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

The damages or other financial detriment suffered by Plaintiff and the other USAA Class and Garrison Subclass members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the USAA Class and Garrison Subclass members to individually seek redress for Defendants' wrongful conduct. Even if the USAA Class and Garrison Subclass members could afford litigation the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT AGAINST USAA

62. Plaintiff Coleman incorporates by reference each allegation set forth in paragraphs 1-52 and 54-61, as if fully set forth herein.

63. Plaintiff brings this claim individually and on behalf of the other USAA Class members.

64. Plaintiff and each of the other USAA Class members were parties to insurance contracts with USAA issued through the USAA Brands, as described herein.

65. Plaintiff and each of the other USAA Class members were insured under a policy issued by USAA or issued by USAA through one of the USAA Brands.

66. Plaintiff and each of the other USAA Class members' insurance contracts are governed by Illinois law.

67. Plaintiff and each of the other USAA Class members made claims under their insurance contracts, which USAA and/or the USAA Brand determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

68. Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Plaintiff and each of the other USAA Class members were each owed the Actual Cash Value of their vehicles, including the cost of sales tax.

69. USAA failed to pay the requisite cost of sales tax to Plaintiff and each of the other USAA Class members on their total loss claims.

70. USAA's failure to pay the requisite cost of sales tax constitutes a material breach of their contracts with Plaintiff and each of the other USAA Class members.

71. As a result of these contractual breaches, Plaintiff and each of the other USAA Class members have been damaged, and are entitled to sums representing the benefits owed for sales tax, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT II
## BREACH OF CONTRACT AGAINST GARRISON

72. Plaintiff Coleman incorporates by reference the allegations contained in paragraphs 1-51 and 53-61, as if fully set forth herein.

73. Plaintiff brings this claim individually and on behalf of the other Garrison Subclass members.

74. Defendant Garrison is liable for the breaches of contract as set forth herein for all USAA insureds issued a policy through Garrison.

75. Plaintiff and the Garrison Subclass members were each party to an insurance contract issued through Garrison.

76. Plaintiff and the Garrison Subclass members were each insured under a policy issued through Garrison.

77. Plaintiff and each of the Garrison Subclass members' insurance contracts are governed by Illinois law.

78. Plaintiff and each of the Garrison Subclass members made claims under their insurance contracts, which Garrison determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

79. Pursuant to the contractual provisions described herein, upon the total loss of their insured vehicles, Plaintiff and each of the other Garrison Subclass members were each owed the Actual Cash Value of their vehicles, including the cost of sales tax.

80. Garrison failed to pay the requisite cost of sales tax to Plaintiff and each of the other Garrison Subclass members on their total loss claims.

81. Garrison's failure to pay the requisite cost of sales tax constitutes a material breach of their contracts with Plaintiff and each of the other Garrison Subclass members.

82. As a result of these contractual breaches, Plaintiff and each of the other Garrison Subclass members have been damaged, and are entitled to sums representing the benefits owed for sales tax, as well as costs, pre- and post-judgment interest, injunctive relief, and other relief as appropriate.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Malaika Coleman, individually and on behalf of the other USAA Class and Garrison Subclass members, respectfully requests that the Court enter judgment in her favor and against Defendants as follows:

a. Entering an order certifying the proposed USAA Class and Garrison Subclass, as requested herein, designating Plaintiff as USAA Class and Garrison Subclass representative, and

appointing Plaintiff's undersigned attorneys as Counsel for the USAA Class and Garrison Subclass;

b. Awarding compensatory damages, and all other available damages, for Plaintiff and the other USAA Class members against USAA and for Plaintiff and the other Garrison Subclass members against Garrison, as well as pre- and post- judgment interests on any amounts awarded;

c. Enjoining Defendants from continuing the illegal practices alleged herein, and for other injunctive relief as is proven appropriate in this matter;

d. Awarding attorney's fees, expenses, and costs of suit as appropriate pursuant to applicable law;

e. Ordering such other and further forms of relief as this Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: August 20, 2019

Respectfully submitted,

*/s/ Adam J. Levitt*
Adam J. Levitt
Daniel R. Ferri
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com

Edmund A. Normand*
Jacob Phillips*
**NORMAND LAW, PLLC**
62 West Colonial Street, Suite 209
Orlando, Florida 32814
Telephone: 407-603-6031
ed@ednormand.com
jacob@ednormand.com

Scott Edelsberg*
**EDELSBERG LAW, PA**

2875 NE 191st Street, Suite 703
Aventura, Florida 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

Andrew J. Shamis*
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 400
Miami, Florida 33132
Telephone: 305-479-2299

***Counsel for Plaintiff
and the Proposed Class***

* Applications for admission *pro hac vice* to be filed

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2019, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

>*/s/ Daniel R. Ferri*
> Daniel R. Ferri