IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALAIKA COLEMAN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>GARRISON PROPERTY & CASUALTY INSURANCE CO. and UNITED SERVICES AUTOMOBILE ASSOCIATION,<br><br>*Defendants*. | No. 19 C 1745<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Defendants Garrison Property & Casualty Insurance Co. ("Garrison") and United Service Automobile Association ("USAA") (together, "Defendants") move to dismiss Plaintiff's first amended complaint under Rule 12(b)(6) for failure to state valid breach of contract claims. For the reasons stated here, the Court grants Defendants' motion [Dkt. 36] and dismisses Plaintiff's claims with prejudice.

**BACKGROUND**

Plaintiff Malaika Coleman brings this action individually and on behalf of two classes against her car insurance provider. Plaintiff totaled her car and sought reimbursement from her insurer. She alleges she was harmed because her insurer did not include the costs of sales tax in the reimbursement. Plaintiff alleges that Defendants' failure to pay the sales tax is a breach of her

1

insurance agreement. (Dkt. 35 ¶¶ 1-6.) Plaintiff's two-count complaint includes a breach of contract claim against each Defendant. (*Id.* ¶¶ 62-82.)

Plaintiff had car insurance through Defendants for her 2006 Chrysler 300. (*Id.* ¶¶ 26, 41.) On September 7, 2018, Plaintiff was involved in an accident while driving her car and filed a property damage claim with Defendant Garrison. (*Id.* ¶ 42.)

Plaintiff's USAA insurance policy provides that Defendants will pay for each "loss" to a covered auto. (*Id.* ¶ 26; *see also* Dkt. 35-1 at 26 ("B. Collision Coverage").) The policy defines "loss" as "direct and accidental damage," which "includes a total loss, but does not include any damages other than the cost to repair or replace." (*Id.* ¶ 28; *see also* Dkt. 35-1 at 25.) The limit of USAA's liability for total loss is "the actual cash value of the vehicle," which the policy defines as "the amount it would cost, at the time of loss, to buy a comparable vehicle." (*Id.* ¶¶ 30, 33; *see also* Dkt. 35-1 at 25, 27.) The policy does not define "actual cash value" as excluding the costs of sales taxes. (*Id.* ¶ 35.) Plaintiff alleges that Defendants promised to pay her the "actual cash value" of her vehicle and breached their agreement by not including the costs of sales taxes in the "actual cash value" payment for her total loss. (*Id.* ¶¶ 37-39, 50.)

On September 12, 2018, Defendants sent Plaintiff a letter about her insurance claim that included the following "Payment Information:"

**Payment:**

| | |
|---|---|
| Vehicle's actual cash value: | $3,260.00 |
| Sales tax: | $0.00 |
| Plate Transfer Fee: | $0.00 |
| Replacement Plates and Sticker: | $0.00 |
| Title Fee: | $0.00 |
| Collision Deductible: | $(1,000.00) |
| Lien Payoff Amount: | $937.47 |
| **Net Total:** | **$1,322.53** |

(Dkt. 35-3 at 6.) The same letter included a "Market Valuation Report" for Plaintiff's vehicle, which included the following "Valuation Summary:"

| VALUATION SUMMARY | |
|---|---|
| Base Vehicle Value | $ 2,959.00 |
| Condition Adjustment | + $ 301.00 |
| **Adjusted Vehicle Value** | **$ 3,260.00** |
| Vehicular Tax (10.25%) | + $ 334.15 |
| Tax reflects applicable state, county and municipal taxes. | |
| **Total** | **$ 3,594.15** |

(Dkt. 35 ¶ 46; Dkt. 35-3 at 7.) On January 9, 2019, Defendants sent Plaintiff a letter titled "TOTAL LOSS SETTLEMENT," which provided that they would pay her $2,491.00, including the following breakdown:

The settlement figure of $2,491.00 is represented as follows:

| | |
|---|---|
| Vehicle's actual cash value | $3,466.00 |
| Plate Transfer Fee | $25.00 |
| Less deductible | $(1,000.00) |

(Dkt. 35 ¶ 44; *see also* Dkt. 35-2.) Plaintiff does not allege exactly what Defendants paid her. Instead, Plaintiff alleges that Defendants paid her the "adjusted value" of her vehicle plus a $25 license/tag transfer fee, but did not pay her the costs of sales tax, which amounted to $334.15. (*Id.* ¶¶ 47-49.)

## STANDARD OF REVIEW

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

3

the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original).

The Court construes the complaint and attached exhibits "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds*, 623 F.3d at 1146. "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678). "Where an exhibit and the complaint conflict, the exhibit typically controls." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). "A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Id.*

## **DISCUSSION**

This is Plaintiff's second attempt to plead her claims. The Court previously dismissed her first complaint for failing to state a claim under Rule 12(b)(6), finding that (1) nothing in the insurance agreement obligated Defendants to pay Plaintiff the "actual cash value" of her vehicle in the event of a total loss and (2) even if Defendants were obligated to pay Plaintiff the "actual cash value" of her vehicle, that did not include sales taxes or title transfer fees. *Coleman v. Garrison Prop. & Cas. Ins. Co.*, No 19 C 1745, 2019 WL 3554184, at *2-3 (N.D. Ill. July 31, 2019).

The amended complaint changes very little. Plaintiff narrows her claims to focus solely on sales taxes (her original complaint also included claims for title transfer fees, which she alleged

4

were also wrongfully omitted from her total loss payment) but beyond that, the new additions to the complaint amount to little more than a few conclusory and ultimately irrelevant allegations. Like last time, the amended complaint again fails to plead facts showing that Defendants promised to pay Plaintiff the "actual cash value" for her totaled car. The policy clearly states that Defendants will pay for "loss" to a covered vehicle. (Dkt. 35-1 at 26.) "Loss" is defined as "direct and accidental damage" to a covered vehicle, which "includes a total loss, but does not include any damage other than the cost to repair or replace." (*Id.* at 25.) There is simply no language in the policy that says, "in the event of a total loss, Defendants will pay the actual cash value of the vehicle" or anything to that effect. Plaintiff cannot conjure that term out of thin air. Still, Plaintiff insists that Defendants promised to pay her the "actual cash value" of her vehicle for her total loss. Plaintiff relies on two policy terms to support her argument. (*See* Dkt. 41 at 4-6.) Both terms fall under the "Limit of Liability" section of the policy:

> **LIMIT OF LIABILITY**
>
> A. Total loss to **your covered auto**. Our limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**.
>
>   1. The maximum amount we will include for **loss** to **custom equipment** in or on **your covered auto** is $5,000.
>
>   2. We will declare **your covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**.

(Dkt. 35-1 at 27.) Plaintiff argues that "the only measure of compensation that the Policy provides for a 'total loss' is the payment of 'actual cash value,'" presumably relying on the policy language excerpted above. (Dkt. 41 at 4; Dkt. 35 ¶ 32.) But Plaintiff stretches the language of the policy far beyond its plain meaning. The policy includes "actual cash value" as one figure it uses

5

to calculate whether a covered vehicle is a total loss, but that does not mean Defendants promise to pay "actual cash value" in the event of a total loss. The policy is clear that in the event of a total loss, the "actual cash value" of a comparable vehicle is the limit of Defendants' liability. But despite Plaintiff's protestations, there is no language in the policy that obligates Defendants to pay "actual cash value" for a total loss. *See also Coleman*, 2019 WL 3554184, at *2-3 (N.D. Ill. July 31, 2019) ("the policy states that the 'actual cash value' of a comparable vehicle is the limit on Defendants' liability—not the amount that Defendants promised to pay [Plaintiff]"). Plaintiff alleges that Defendants promised to pay for total loss "on an 'actual cash value' basis," (Dkt. 35 ¶ 32) but that allegation is conclusory and conflicts with the plain language of the contract, so it is disregarded. *See Forrest*, 507 F.3d at 542.

Plaintiff relies on *Carey v. American Family Brokerage, Inc.*, 909 N.E.2d 255 (Ill. App. Ct. 2009), for the proposition that "the measure of loss and measure of damages in a Policy that provides for 'actual cash value' as a limit of liability is the 'actual cash value' of the damaged property." (Dkt. 41 at 5.) But in that case, the insurance policy declarations "specifically provide[d] that the loss to the subject building [wa]s to be measured on an actual cash value basis." *Carey*, 909 N.E 2d at 258. In other words, the policy in *Carey* explicitly promised to measure loss and damages using "actual cash value." There is no comparable language in Plaintiff's policy, where "actual cash value" is instead used in two discrete ways: as one variable used to determine whether damage to a covered vehicle is a total loss, and as a limit on Defendants' liability. (Dkt. 35-1 at 19.) *Carey* is inapposite.

Plaintiff also argues that even if the policy language itself does not include a promise to pay actual cash value for a total loss, Defendants are still obligated to do so because they "chose" to pay for Plaintiff's total loss "on an 'actual cash value' basis" and stated their intent to do so in

6

two letters they sent to Plaintiff, which are attached to the complaint as exhibits. (*See* Dkt. 41 at 5-6; *see also* Dkt. 35-2, 35-3.) But Plaintiff does not plausibly allege (nor could she) that either letter actually constitutes a promise to pay actual cash value or memorializes Defendants' intention to do so. Indeed, the amended complaint alleges that the January 2019 "Total Loss Settlement" letter "stated that [Defendants] were purportedly paying Plaintiff the 'actual cash value' of her Insured Vehicle." (Dkt. 35 ¶ 44.) The letter actually says:

> January 9, 2019
>
> Dear Ms. Coleman,
>
> This letter confirms our conversation on September 7, 2018 notifying you that your vehicle referenced below is a total loss.
>
> USAA policyholder: Malaika Coleman
> Claim number: 028477371-002
> Date of loss: September 07, 2018
> Vehicle: 2006 CHRYSLER 300 4D
> VIN: 2C3KA43R76H108843
>
> The settlement figure of $2,491.00 is represented as follows:
>
> | | |
> |---|---|
> | Vehicle's actual cash value | $3,466.00 |
> | Plate Transfer Fee | $25.00 |
> | Less deductible | $(1,000.00) |

(Dkt. 35-2 at 2.) Plaintiff does not explain how this is a so-called promise to pay actual cash value or a reflection of Defendants' intent to do so. If anything, it reflects Defendants' intention to pay Plaintiff a "settlement figure" of $2,491.00. As for the other letter, Plaintiff does not allege anywhere in the amended complaint that it includes a promise to pay actual cash value or a memorialization of such a promise. The letter states that it is providing "details about [Plaintiff's] claim and claim payment," and reads:

7

```
Payment:
    Vehicle's actual cash value:      $3,260.00
    Sales tax:                        $0.00
    Plate Transfer Fee:               $0.00
    Replacement Plates and Sticker:   $0.00
    Title Fee:                        $0.00
    Collision Deductible:             $(1,000.00)
    Lien Payoff Amount:               $937.47
    Net Total:                        $1,322.53
```

(Dkt. 35-3 at 6.) Again, Plaintiff does not try to explain how or why this constitutes a promise by Defendants to pay actual cash value. If anything, it reflects Defendants' intention to pay Plaintiff a "net total" of $1,322.53.

Plaintiff's remaining arguments are devoted to why "actual cash value" includes sales tax. (*See* Dkt. 41 at 6-9.) But as the Court already explained, Defendants never promised to pay Plaintiff the "actual cash value" of her vehicle. As the policy makes clear, "actual cash value" is the limit of Defendants' liability for total loss—not the amount it promised to pay in the event of total loss. *See also Coleman*, 2019 WL 3554184, at *2. Nothing in the amended complaint changes that conclusion, and thus there is no reason for the Court to reach Plaintiff's arguments about whether "actual cash value" includes sales tax.

Finally, as to both parties' arguments about whether Illinois insurance regulations support their positions, nothing in the amended complaint changes the Court's previous analysis of this issue. As the Court already explained, the regulation is not applicable to this case, because neither scenario contemplated by the regulation is present here. *See id.* at *4.

## CONCLUSION

Because there is no language in the policy or the related letters that obligates Defendants to pay Plaintiff the "actual cash value" of her vehicle in the event of a total loss, Plaintiff fails to state breach of contract claims against Defendants. Defendants' motion to dismiss [Dkt. 36] is

8

granted and Plaintiff's amended complaint, including both the individual and putative class claims, is dismissed with prejudice. *See Weismueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008) (If "the named plaintiff's claim becomes moot before the class is certified, the suit must be dismissed because no one besides the plaintiff has a legally protected interest in the litigation").

_____
Virginia M. Kendall
United States District Judge

Date: January 30, 2020